IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| LINDA SUE MIATKE, f/k/a<br>LINDA SUE LUDWICK,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No. C08-1019<br><br>RULING ON JUDICIAL REVIEW |

## TABLE OF CONTENTS

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.  PRIOR PROCEEDINGS.* . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. PRINCIPLES OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV. ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     *A.   ALJ's Disability Determination.* . . . . . . . . . . . . . . . . . . 4
     *B.   Claimant's Arguments.* . . . . . . . . . . . . . . . . . . . . . . . 6
     *C.   Reversal or Remand.* . . . . . . . . . . . . . . . . . . . . . . . 11

*V.   CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*VI.  ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Linda Sue Miatke on June 10, 2008, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Miatke asks the Court to reverse the decision of the Social Security

Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Miatke requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

On August 12, 2005, Miatke applied for disability insurance benefits. In her application, Miatke alleged an inability to work since July 25, 2005 due to diabetic neuropathy, paresthesia, myalgia, high cholesterol, and high blood pressure. Miatke's claim was denied on October 6, 2005. On December 7, 2005, Miatke's application was denied on reconsideration. On December 9, 2005, Miatke requested an administrative hearing before an Administrative Law Judge ("ALJ"). On November 13, 2006, Miatke appeared with counsel[1] before ALJ Daniel Dadabo for an administrative hearing. Miatke and vocational expert Frank Mendrick testified at the hearing. In a decision dated October 24, 2007, the ALJ denied Miatke's claim. The ALJ determined that Miatke was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Miatke appealed the ALJ's decision. On April 9, 2008, the Appeals Council denied Miatke's request for review. Consequently, the ALJ's October 24, 2007 decision was adopted as the Commissioner's final decision.

On June 10, 2008, Miatke filed this action for judicial review. The Commissioner filed an Answer on September 9, 2008. On October 10, 2008, Miatke filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she could perform other work that exists in significant numbers in the national economy. On January 5, 2009, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On

---

[1] At the hearing, Miatke was represented by attorney Randall Manus. At this time, Miatke is represented by attorney Danita L. Grant. Attorney Grant has represented Miatke since April 19, 2008. *See* Administrative Record at 2 (Attorney Fee Contract).

2

January 14, 2008, Miatke filed a reply brief. On July 29, 2008, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 405(g), the Court has the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). Furthermore, "[s]ubstantial evidence is 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (quoting *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989), in turn quoting *Consolo v. Fed. Mar. Comm'n*, 282 U.S. 607, 620 (1966)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner,*

499 F.3d at 484 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). "[E]ven if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)).

## IV. ANALYSIS

### A. ALJ's Disability Determination

The ALJ determined that Miatke is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(f); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. § 404.1520(a)-(f). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the

Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Miatke had not engaged in substantial gainful activity since July 25, 2005. At the second step, the ALJ concluded from the medical evidence that Miatke had the following severe combination of impairments: non-insulin dependent diabetes mellitus, neuropathy NOS, hypertension, and hyperlipidemia. At the third step, the ALJ found that Miatke did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Miatke's RFC as follows:

> [Miatke] retains a maximum residual functional capacity for sedentary work (i.e. work which requires the ability to lift and carry (push/pull) up to 10 pounds at a time, to sit up to 6 hours of an eight-hour workday, and to stand and walk up to 2 hours of an eight-hour workday), subject to only occasional bending or stair-climbing, and the need to avoid unprotected heights, heavy equipment or moving machinery. The undersigned declines to find manipulative limitations or the need for walker assistance.

(Administrative Record at 77.) At the fourth step, the ALJ determined that Miatke was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Miatke could work

5

at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Miatke was not disabled.

## B. Claimant's Arguments

Miatke argues that ALJ failed to fully and fairly develop the administrative record. Specifically, Miatke argues that the ALJ failed to include medical records from the University of Wisconsin in the administrative record, which she claims show that she suffers from a conversion disorder.[2] Additionally, because the University of Wisconsin medical records are missing from the administrative record, Miatke contends that the ALJ failed to properly evaluate her conversion disorder when making his disability determination.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

---

[2] Conversion disorder is defined as "a condition in which you show psychological stress in physical ways. . . . Conversion disorder signs and symptoms appear with no underlying physical cause, and you can't control them. Signs and symptoms of conversion disorder typically affect your movement or your senses, such as the ability to walk, swallow, see or hear." *See* Mayo Clinic's website at http://www.mayoclinic.com/health/conversion-disorder/DS00877.

6

Reviewing courts also have the authority to order the consideration of additional evidence, but "'only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in the prior proceeding.'" *Woolf v Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993) (quoting 42 U.S.C. § 405(g)). New evidence is material if it is "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the [Commissioner's] determination." *Id.* (citing *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984)); *see also Hinchey v. Shalala*, 29 F.3d 428, 432-33 (8th Cir. 1994) (same).

At the outset, the Court will review the pertinent events pertaining to the medical records from the University of Wisconsin which were not included in the administrative record. In November 2006, at the administrative hearing, the ALJ, Miatke, and attorney Manus, had the following discussion:

| | |
|---|---|
| ALJ: | Have any of your doctors sent you out for a psychological examination? |
| Miatke: | Yes. |
| ALJ: | Okay. And when did you undergo a psychological examination? |
| Miatke: | I think it was early this year. I don't remember what day. |
| ALJ: | What is the name of the physician or psychologist who examined you? |
| Miatke: | I think Dr. Herman. |
| ATTY: | She went up to the -- |
| ALJ: | Is he in Rockford? |
| ATTY: | She went -- Judge, she went to the University of Wisconsin for an exam and saw several doctors. One of them was a Dr. Herman, a psychiatrist I think. |
| ALJ: | Okay. And I didn't happen to notice those. Maybe I -- |
| ATTY: | No, they're not in the record. |

| | |
|---|---|
| ALJ: | Okay. |
| ATTY: | I wasn't aware that she had done that, so I haven't sent for those yet, but I will send for them. |
| ALJ: | Okay. Do you recollect what Dr. Herman said, ma'am? |
| Miatke: | I never got back to him and they never set me another appointment and so I have no idea what's in his report. |

(Administrative Record at 27-28.) At the close of questioning, the ALJ informed Miatke and attorney Manus that he would wait for the medical records from the University of Wisconsin "before we decide what to do here."[3]

Miatke maintains that on February 1, 2007, attorney Manus faxed additional evidence to the ALJ, including the medical records from the University of Wisconsin. Attorney Manus included a cover letter with the fax of the additional evidence which provided a listing of the additional medical evidence he submitted to the ALJ: (1) Records from University of Wisconsin Hospital & Clinics for the time period 1/1/06 to date; (2) records from Monroe Clinic/Monroe for the time period 6/15/06 to date; and (3) records from Monroe Clinic/Freeport (Dr. Randall Robyn) for the time period 1/1/06 to date.[4] The administrative record contains medical records from the Monroe Clinics.[5] These medical records show that they were faxed from Manus Law Offices on February 1, 2007 at 4:28 p.m. The administrative record, however, does not contain the medical records from the University of Wisconsin.

On March 16, 2007, the ALJ wrote to attorney Manus and stated:

---

[3] *See* Administrative Record at 50.

[4] *Id.* at 205.

[5] *Id.* at 296-305.

8

> I held the record open subsequent to the hearing for [Miatke] so that you could submit additional evidence. You neither submitted such evidence nor sent a request for more time.
>
> If you do not send the evidence, request additional time, or satisfactorily explain why you cannot submit the requested evidence, within 10 days of the date of this letter, I will make my decision based on the available evidence.

(Administrative Record at 204.) In response to the ALJ's letter, attorney Manus wrote:

> I am responding to your letter to me dated 3/16/07, concerning my failure to submit additional evidence in this case.
>
> On 2/1/07 I faxed in records from University of Wisconsin Hospital & Clinic, and Monroe Clinics of Monroe and Freeport. I also advised you that we were not able to get a physical RFC Questionnaire from Dr. Robyn and that we had no further evidence to submit. I enclose a copy of my cover letter, for ready reference.

(Administrative Record at 206.) The administrative record does not contain any further correspondence between attorney Manus and the ALJ. In his decision from October 2007, the ALJ discussed the medical evidence from the University of Wisconsin and explained:

> At hearing, [Miatke] reported having undergone evaluation at the University of Wisconsin, where she was examined by several physicians, including a psychiatrist named Dr. Herman. . . . Regardless, she indicated that Dr. Herman had not re-contacted her and she had no idea what might be contained in his report.
>
> [Miatke] through her representative indicated at hearing that she would obtain and provide copies of Dr. Herman's records, but no such records were forthcoming. . . .

(Administrative Record at 75.)

Having reviewed the entire record and considered the arguments of the parties, the Court finds that the missing medical records are material, relevant, and probative to

9

Miatke's condition for the time period that her benefits were denied. *See Woolf*, 3 F.3d at 1215. In July 2006, Dr. Yasser Salam, M.D., one of Miatke's treating physicians, opined that the diagnosis of conversion disorder by doctors at the University of Wisconsin, was consistent with her "current symptoms, improvements, and recent change of her complaints following the domestic abuse issue with her husband[.]"[6] Furthermore, in his decision, the ALJ refers to Dr. Salam's July 2006 opinion, and suggests that Miatke's symptoms may be related to a conversion disorder which was diagnosed by doctors at the University of Wisconsin.[7] Interestingly, the ALJ never reviewed the medical records from the University of Wisconsin, yet based on the treating notes of one of Miatke's doctors, the ALJ suggested that Miatke's condition might be explained by those records. Moreover, the ALJ made no attempt to obtain the medical records from the University of Wisconsin which Dr. Salam referred to in his treating notes, and the ALJ considered probative and relevent to Miatke's condition.

While it is unclear why the University of Wisconsin medical records were not included in the administrative record, it is clear that attorney Manus faxed or attempted to fax the additional evidence to the ALJ in February 2007. Then in March 2007, and in response to a letter from the ALJ inquiring as to the additional evidence, attorney Manus alerted the ALJ to the fact that he had faxed the additional evidence in February 2007. Bearing in mind that the ALJ believed that the diagnosis of conversion disorder found in the medical records from the University of Wisconsin shed light on Miatke's condition and attorney Manus alerted him to the fact that he had faxed the addition evidence in February 2007, it begs the question why the ALJ did not attempt to find these medical records or

---

[6] *Id.* at 306.

[7] *Id.* at 76. In discussing Dr. Salam's opinions at pages 306-308 of the Administrative Record, the ALJ notes "the treating sources have not been able to confirm a medical etiology, and it clearly appears that her symptoms are the possible product of a non-organic conversion disorder, as inferred by University of Wisconsin psychiatrist Susanne K. Seeger, M.D." *Id.*

require attorney Manus to re-fax them if the February 2007 fax was incomplete or lost. Accordingly, the Court finds that the ALJ failed in his duty to fully and fairly develop the record. *See Cox*, 495 F.3d at 618.

The Court further determines that the medical records from the University of Wisconsin constitute material evidence which should have been included in the administrative record, and Miatke has shown good cause as to why this evidence was not included in the administrative record. *See Woolf*, 3 F.3d at 1215. Therefore, the Court concludes that this matter should be remanded so that the University of Wisconsin medical records may be made a part of the administrative record. *Id.*; *see also Wilcutts*, 143 F.3d at 1138 (providing that an administrative hearing is a non-adversarial proceeding, and the ALJ must develop the record fully and fairly in order that deserving claimants who apply for benefits receive justice). On remand, the ALJ must consider the University of Wisconsin medical records and their effect on Miatke's disability determination. In making this determination, the ALJ should also reconsider the opinions of Dr. Salam, reconsider Miatke's RFC, and make new findings regarding Miatke's credibility in light of the new medical records.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record by not including the University of Wisconsin medical records in the administrative record. Accordingly, the Court finds that remand is appropriate so that the University of Wisconsin medical records may be included in the administrative record and considered by the ALJ in making the disability determination.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should develop the record fully and fairly with regard to the University of Wisconsin medical records. Additionally, the ALJ should also reconsider the opinions of Dr. Salam, reconsider Miatke's RFC, and make new findings regarding Miatke's credibility in light of these new medical records.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 2nd day of April, 2009.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA